David Baldwin v. David Baldwin Good morning and welcome to the Ninth Circuit. We've read your briefs. We look forward to your arguments. A little housekeeping. We've got one case submitted on the briefs. Moncia Lemus v. Barr. The rest of the cases will be argued. The first one on the argument calendar this morning, Strother v. Baldwin. When you're ready, counsel. Good morning to the court. I would like to reserve at least three minutes for rebuttal. Keep your eye on the clock. It counts down. Yes, sir. If you start talking, she'll start clicking. This appeal concerns a soldier's right to have the United States. I'm sorry to interrupt. Your name for the record. Oh, I'm sorry. That's all right. Daniel Wellman. Daniel C. Wellman for the plaintiff. Thank you. This appeal concerns a soldier's right to have the United States Department of Defense honor enlistment contract signed in good faith, earned upon commitment and to stop recoupment of all accrued benefits of soldiers. The one thing we can agree on, I think, with defense counsel, is that there are some controlling cases, Larianoff, Bell, and Costello, but their interpretation of them is in error, and I believe that the district court's interpretation of these cases was completely in error. The court just has simply adopted defendant's position below, and there is controlling United States Supreme Court Larianoff and Ninth Circuit precedent, and we would have to overturn those cases to say that when these soldiers without, I'm sure you read the briefs, but these soldiers were given bonuses back in 2006, they got deployed, and then the United States government said, hey, we want that money back. You didn't earn that. And then, belatedly, the government kind of comes to its senses and does more or less the right thing. Many years later, yes. So here we are 13 years later. So help me understand the theory of your case, because I'm having trouble figuring it out. Okay. The theory of the case, Your Honor, is that bonus contracts, when you sign a bonus, the second you sign it, it is yours, and the Supreme Court has held that. They held that in Larianoff, and the distinction here is the district court was trying to say in the defense argument below was that, hey, this is regular pay controlled by statutory, you know, by Congress, and it's set at a set level, and Congress controls it, and they can take it and they can give it away. Same thing with your pension, same thing with medical benefits. But a bonus, and there's a case that is exactly on point with Larianoff that happened during the Vietnam era where we had soldiers they wanted to retain, and they put in a bonus situation for these soldiers. They signed their contracts, and in that case these soldiers, they signed theirs to, it was almost like a deferred bonus to go off like two, three years in the future, and, you know, in two years you're going to get your bonus. Well, what happened was Congress passed a new bonus scenario and changed a few things around, and then the DOD told these soldiers, hey, you're not going to get your bonus. You're not getting that. You're not entitled to that. And some of these soldiers went forward, and they fought that, and they said, this is a property interest. We have a right to this. This is a taking, essentially, because we contracted for it. It's not controlled necessarily by the statutory language. Now, the U.S. Supreme Court held that they were, in fact, entitled to that money. It was an entitlement. It was an accrued benefit. And when you look at the statute, you know, as I put forth in the brief, this goes back to the very first Attorney General of the United States Department of Justice, where there was a soldier, Major Herod, his name was. The guy was sitting on trial. He was going to be hanged, but he was never court-martialed. And since he was not court-martialed, he was entitled to his pay. And that's the thing. Any time, once you have a benefit, once you receive that benefit, it can never be recouped. And as I pointed out here, defendants before Congress in a report both parties submitted. That was a report for Congress in this matter. Assuming for a moment that you're right, what damages does your client get? My client didn't receive all of his student loan payments. It was in his contract. And, you know, as we're going back to Larianoff, they said, hey, it's earned upon commitment. And this circuit, this circuit in a binding en blanc case said, hey, this is earned upon commitment. They cited Larianoff. And to define otherwise would be you would have to overturn these two cases, and it cannot be done. And they said it was earned upon commitment. And what we have here is when the difference between those cases was these guys signed bonuses. They go off five, six years in the future, some guys two years, and they start collecting their bonuses. And this, these guys got their bonuses immediately. And in my case with Sergeant Struther, just got back from Afghanistan, he got a $15,000 bonus. There's another guy slated in here, Robert Richmond. He's a little bit better for math. He got $20,000. The United States government takes $8,000 out for taxes. Years later they're like, hey, we want the full $20,000 back. The Department of Treasury, and they're tacking on 28% interest. And this happens all the time. And the thing is if we file the case law, 150 years worth of case law, once it benefits accrued, once it is accrued, once it is earned, you cannot take it. It's theirs. It's theirs forever. Absent a court martial. And the thing is you cannot, they cannot take accrued pay. You can forfeit future pay. But if you have something coming off in the future, so even if we were talking about a soldier's pay, which is controlled by statutory language, you can say, hey, we're going to take this pay away from you. Down the road we're going to reduce it. They could do it to the court if they want to reduce your salary. Absolutely controlled by Congress. But they cannot take back anything you've earned. They cannot take back anything you've earned. And that's what they've been doing. What is your client short on? If I can finish my question. Yes, I'm sorry. What is your client short on that the subsequent action by Congress to repay these benefits that he didn't get? He never got his student loan repayment. He only got a part of it. There's a ton of soldiers that only got part of their student loans paid. There's many people who actually got deployed, only got part of the bonus, found out, well, they're deployed, hey, you're not getting the rest of your bonus. So that has happened. That money is pegged at at least $43 million. It happened to thousands of people. They did not get what they bargained for of the government. And going forward on my other issues, there's a fraud claim. I'll get to that last. But, you know, the court acted like they kind of didn't have notice in this case. But they do note that, hey, a plaintiff says that they believe they have a property interest. And their contract. So the court was able to identify what we said. Defense was able to identify what the claims were. There's not a hiding pleading standard on this 1983 14th Amendment claim. In regards to the fraud claim that we made, when this all happened, they admitted fraud. They admitted fraud. They admitted it in a report to Congress. They admitted it in testimony in Congress. They admitted it in multiple public statements. So even though it was. So what paragraph of your complaint sets out with particularity the particular fraudulent representation on which you rely? That would be the trick on the fraud. But I do believe that when I cite to the pleadings and I cite to the retention seminar order. I think Judge Vinnit is asking you for a precise citation to the complaint. In regards to a particular defendant, I would say that particularity is not there. But I do believe that I cited it in the supporting documents, which is the point that I wanted to make, that even if you were not going to hold that particular point in our favor. I talked about supplemental pleadings, hyperlinks. There's all kinds of documents in this case. Okay. Now you're down to two minutes. Would you like to save that time? I'm going to just get to one point and then I will sit down here. Thank you. You know, going forward, hyperlinks are incredibly important. They're part of regular everyday pleadings. And I told the court, hey, I put this in here in hyperlinks and news articles. I linked them to reports and stuff like this. And the court considered these pleadings and that it did not exclude them, even though the defense tried to exclude these hyperlinks. And without a particular order excluding them, I believe they should be part of the pleadings. Thank you. Okay, thank you. You can lower that. There's a switch there. There you go. Thank you. All right. Better? Okay. Good morning. May it please the Court, Laura Myron for the government defendants. I'd like to begin with Larianoff, which is the Supreme Court case on which plaintiff has relied. That case does not say that at the moment you sign a contract for an enlistment bonus, you are therefore entitled to it no matter what. What it says is that entitlement to bonuses, like regular pay, is governed by statute. And the court came to the conclusion in that case that Congress, in fact, intended for soldiers who had signed enlistment contracts, re-enlistment contracts, but not yet begun their term of re-enlistment to be entitled to those bonuses. And so in order to apply that case here, you would need to conclude that Congress somehow intended for soldiers who signed the enlistment bonuses at issue here, like plaintiff, to be entitled to those bonuses. And there has been no allegation of that kind. What we have here instead is a situation in which Congress came in and said, we do not think that you should be recouping these particular bonuses, and you directed the Secretary of Defense to undergo a review process, which has been completed, in which the vast majority of affected, identified soldiers received a full refund of the money that had been withheld and a clearance of any debt that had been certified or assurance that no debt would be certified in the future. And as I understand the argument you're making, it is premised on an argument that the initial bonuses were granted in violation of law. Yes, Your Honor. I don't think there's been any contention to the contrary from plaintiffs that the law at the time that the bonuses were offered were, in fact, the soldiers were, in fact, eligible for them. But in any case, he's identified no declaratory injunctive relief that he would be entitled to that would give him any process beyond what he's already gotten from the Department of Defense. He's gotten, as I said – No, this is a due process. This is not a due process question, but I think you answered it. That is to say you said there was no statutory authorization for the bonuses. Yes, Your Honor. That's the premise of the suit here. I asked you whether that was the premise of your defense. It is also, in part, the premise of our defense because you would need to show that you were, in fact, entitled to the money in order to get anything that had otherwise been withheld. But the entirety of the – Well, no, you keep sliding off. Entitled by statute or entitled by contract? You just said entitled, so help me out here. Yes, Your Honor. Entitled by statute. And that is the clear holding of the Supreme Court in Bell and Larinoff and Costello. The Court said that, especially in Bell, that an enlistment contract is not a regular sort of contract. It's a contract that changes the status of the individual and that even if you violate the contract, that doesn't change your status as a member of the military. And so you cannot bring the kind of breach of contract claim that the plaintiff is seeking to bring here. Instead, your entitlement to pay, and in Larinoff the Court said your entitlement to enlistment bonuses, is governed by statute and what Congress intended to be your entitlement at the time that you enlist or that you reenlist. So what's a soldier or a Marine contemplating reenlistment supposed to do in a circumstance like this? In a circumstance like what, Your Honor? Like his client faced. Sure. So obviously he's supposed to know that when the government says we're giving you this bonus and all of these other benefits because you're reenlisting and you're going to get it, he should have known that the government had no statutory authority to tell him that? Your Honor, the question in this case is whether there's reason to think that the plaintiff is entitled to damages for something which he hasn't alleged any specific harms or amount that would be. What I'm talking about for the future. Sure. Someone is being asked to reenlist knowing that it may involve a deployment in harm's way. Are they supposed to inquire? Are you sure whoever's making the offer, recruiting sergeant, that the government has the authority to give me this benefit? Certainly, Your Honor, and if I could reassure you, there have been a number of things that the Department of Defense has put in place, especially laid out by Congress in the statute at issue here, that work to ensure that this kind of situation won't occur in the future. Is one of the things that they've done is to say by statute that if the enlisting sergeant or whoever it is says something that's untrue, that's relied upon, that will then be binding? I doubt they have. No, Your Honor, what they've said. So the only thing they've done is to ensure, as best they can, that the recruiters don't make false promises. Yes, Your Honor. But they don't say that if a false promise is made and relied on, that the promise will be binding. In these particular circumstances. Is that right? If I could take your question in two parts. In these particular circumstances, Congress said that where a soldier had accepted the enlistment offer in good faith, that they would be entitled to keep the money that had been paid. And there's no reason to think that this is the kind of thing that's happening across the board. As I said, there have been a lot of protections that have been put in place in order to prevent this kind of situation from occurring again in the future. And there are regular processes in place in which soldiers may seek review of any effort by the military to recoup bonuses of this kind and others. They may seek a waiver of those debts for a variety of reasons. And generally speaking, it's fairly easy to receive that kind of waiver. The commanders have a lot of authority to grant waivers of any debts that soldiers might incur, and they do on a regular basis. And in circumstances like this, Congress, as I said, got involved. They sought to address anything that had arisen out of this particular instance, including- You make it sound as though this was just kind of a walk in the park. No, this was a very long struggle, and it took a very long time for Congress to get around to making it right, and at least according to the allegation of the suit, they didn't even quite do it in this case. Your Honor, I understand the concern. As I said, they put in a number of protections to ensure that this kind of circumstance does not arise again in the future. The Secretary of Defense has also undertaken a number of things to help soldiers who might have been subject to this kind of recoupment with any financial hardship that has arisen, and Congress provided that any debt that was certified with respect to the enlistment contracts at issue here would not show up on any consumer credit reports or anything of that nature. What's Mr. Willman to do? I take it it sounds like he represents more than one member of the military. What's he to do when the next member of the California National Guard is promised this kind of promise and they come in and seek his advice? What should he do? Well, if you're referring to any members of the California National Guard that might have been offered this kind of enlistment bonus between 2004 and 2015, the class of soldiers who could potentially have been subject to debts was identified by the Department of Defense, and almost all of them received a full waiver of any debt that either was or could be established against them and a refund of any money that had been withheld. There are a few members who, as the record and our briefs indicate, did not receive a full refund, but that was in circumstances in which the military established a different basis for the soldier not being entitled to the money, in most cases misconduct or a failure to serve the full term of service required by the offer. And so if you're suggesting, as I think you might be, that this is something – Well, I'm not suggesting anything. I'm just – you represent the government. What's someone in Mr. Willman's position supposed to do the next time a soldier, sailor or marine or airman or woman, comes in to see him and has said, I've been offered this re-enlistment bonus, how can I make sure that this is going to be paid? Certainly. Well, a couple of things. The first is I think there is opportunity for our soldiers to ask questions at the time of re-enlistment, and there is some obligation on soldiers to sign contracts that they know are promising them things that they're otherwise entitled to. But if you have a circumstance in which after a contract has been signed and a recoupment of some sort has been sought by the government, there is an administrative process which soldiers are – is available to soldiers much like the one at issue here. And at the conclusion of that, if the soldier is not satisfied with the result, they could bring possibly a claim under the Tucker Act or a little Tucker Act depending on the amount of money in question or could potentially bring an APA claim with regard to the administrative decision at the conclusion of that process. But what you don't get to bring is the kind of suit that we have here alleging common law, breach of contract claims. When the government paid most of the soldiers the money that had been withheld, did they pay with interest? I should say, did the government pay with interest? Yes, Your Honor, there's indication in the report from Congress – or excuse me, to Congress that's in the record beginning at Excerpts of Record 102 that where refunds were given to most, I believe if not all soldiers, they were paid with fees, which includes administrative fees and interest. And was there any penalty in addition? When I don't pay the government on time, I pay not only interest but a penalty. Did the government pay a penalty? Not as far as I understand, Your Honor. There were administrative fees and interest, as I said, repaid to soldiers. And there were offered to soldiers from whom debts had been certified any support with regard to financial hardship and then also an assurance from Congress and from the Secretary that there would be no consequences on any consumer reporting services as well. I see I'm out of time, but if there are no further questions, we ask that you affirm. Thank you. Mr. Whelan. Yes, thank you, Your Honor. It took me seven years to get here. This is our first hearing in court. My client was going through this at least three years before I got involved. So I apologize for any shortness. I get calls every week. I still get calls since this case happened from soldiers asking me the exact same questions they're talking about. This type of case happens about every 20 years. There's not a lot of case law on it, but the case law that is on it is in the brief, and I totally, 100 percent disagree with what the defense says here. We're asking about what Congress can do. The Supreme Court of the United States has already said that if a benefit's accrued, you cannot take it. And if we follow the case law of Lirionov, Costello, and Bell. But I'm afraid as I read Lirionov, it's premised upon there having been a statutory problem, not just a contractual problem. How do you respond to that? That's the government's argument. They're saying it's statutory, but the distinction, Your Honor, is that it's not regular pay. If you read into it, it's a bonus, and there's testimony by the undersecretary of state at that time. They say this is a different deal. They have to have some trust that they're going to get this money. So it's in there, and it's in the brief. And either Peter Levine, who was the undersecretary at the time, said, hey, we're recouping against 100,000 people at a time, and this is just a fact of life. And it really shouldn't be a fact of life. If we follow precedent, binding precedent, we would not be recouping people. The other thing I have to say is that these weren't improper contracts. These weren't invalid. They said that many, many times. These soldiers signed these contracts in good faith, and there is statutory language that says that. If they signed in good faith, they don't have to pay it back. And the thing is, this is repetitive, and this has happened many times. It's capable of repetition. You've got evading judicial review. And when a soldier signs a contract, as this case of Jackson v. Tate out of this circuit, that's a civilian act. When he does that and he signs that contract, he does it. That's an act of a civilian. And all these other things we're talking about, being subject to DOD and all that, does not apply. This is the proper court to decide this, not going through the administrative process of the DOD. Okay. Thank you, Your Honor. We've taken you over time, but thank you very much. Thank both sides for their arguments. Struther v. Baldwin, submitted for decision. The next case this morning, Gallagher v. Philadelphia, indemnity insurance.
judges: Hawkins, W. Fletcher, Bennett